GASTA v. HAMPTON TOWNSHIP.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—VOLUN-TEER FIRE DEPARTMENT.

In proceeding by widow and minor children of farm implement dealer who was on the list of persons called by individual who had contracted to purchase and maintain certain fire-fighting apparatus for use in three townships, and who was killed en route to fire to which he had been called, record sustained finding of department of labor and industry that there was no organized volunteer fire department in any of the three defendant townships, notwithstanding knowledge on their part that there were volunteers who went to fires (2 Comp. Laws 1929, § 8413, as amended by Act No. 107, Pub. Acts 1939).

2. SAME—VOLUNTEER FIRE DEPARTMENT—STATUTES.

Provision of workmen's compensation act that members of a volunteer fire department of any city, village or township should be deemed an employee thereof and entitled to benefits of the act when injured in the performance of their duties as members of such department and deemed to be receiving a certain weekly wage does not apply to volunteers or helpers who go to a fire unless there is an organized volunteer fire department (2 Comp. Laws 1929, § 8413, as amended by Act No. 107, Pub. Acts 1939).

3. SAME—RURAL FIRE PROTECTION—VOLUNTEER FIRE DEPARTMENT.

Arrangement whereby person who contracted with three nearby townships to purchase and maintain certain fire-fighting equipment for a period of three years and whose friends and acquaintances as well as others went to fires and assisted in extinguishing them did not constitute a "volunteer fire department" of the three townships or any of them within the meaning of that term as used in workmen's compensation act affording benefits to members of such departments in case of injury while engaged in performance of duties thereof, no irregularity being claimed on account of the fact that such

fire protection was purchased from an individual rather than from another municipality (Comp. Laws 1929, § 2460, as amended by Act No. 188, Pub. Acts 1939; § 2461; § 8413, as amended by Act No. 107, Pub. Acts 1939).

Appeal from Department of Labor and Industry. Submitted April 7, 1943. (Docket No. 7, Calendar No. 42,201.) Decided May 18, 1943.

Julia Gasta, widow, presented claims of herself and two minor children against Townships of Hampton, Portsmouth, and Bangor of Bay County, and Paul R. Glocksine, alleged employers, and State Accident Fund, insurer, for compensation for death of Leonard Gasta. Award to defendants. Plaintiffs appeal. Affirmed.

*A. H. & A. W. McMillan,* for plaintiffs.

*F. Norman Higgs,* for defendant Townships of Portsmouth and Bangor.

*Albert W. Black,* for defendant Hampton Township.

BUTZEL, J. Paul R. Glocksine was engaged in the automobile business in Hampton township, Bay county, near Bay City, Michigan, where he lived. He was also agent of a fire equipment company. He promoted separate contracts for fire protection with Hampton township and the neighboring townships of Portsmouth and Bangor with himself. The one with Portsmouth township was entered into first and is similar to those entered into with the other two townships. It provided that Glocksine was to purchase a 1½-ton Chevrolet truck with dual rear wheels equipped with fire-fighting apparatus con-

sisting of 400-gallon tank, 500-gallon per minute pump, extension ladders, 1,160 feet of hose of various sizes, axes, roof ladder, two chemical fire extinguishers and all necessary trimmings to install the equipment on the truck. He agreed to keep the truck in his garage in Hampton township where he was to maintain a telephone and was not to contract for fire aid for more than the three townships, whose names he was to have painted on the truck. The contract was for three years. Glocksine agreed to have one trained operator ready with the truck to answer promptly all calls for fire fighting. Each township separately agreed to pay the sum of $750 a year for three years for its fire protection but Portsmouth township was to pay only $500 for the third year.

The Hampton township board deemed it necessary to secure the authority of the electors before entering into the Glocksine contract and on October 9, 1940, the question of appropriating an annual sum not to exceed $750 to ''purchase rural fire protection from Paul R. Glocksine'' was submitted to the voters. They approved of a resolution to that effect. Glocksine had an insignia painted on the fire truck reading as follows: ''H. B. & P. F. D.'' The truck was also equipped with rubber boots, coats and helmets. There was not a word in any of the contracts in regard to helpers or volunteers at fires.

There had been some previous interest manifested in fires by the ''Fire Fan Club,'' which included several business men of Bay City. Glocksine was a member of the club. The members had attended fires but had not assisted in extinguishing them. Three members of the club offered to assist in helping to fight fires and they together with Glocksine constituted a part of Glocksine's list of those who wished to be notified of fires. The contract with

Portsmouth township board contained a provision, not found in the contracts of the other townships, to the effect that the township should receive all moneys paid to the township for fire fighting service for fires in the township of Portsmouth. A supervisor of Hampton township and a member of the township board testified that Glocksine never mentioned that he would rely on volunteers to fight fires. In fact, the supervisor did not know of any volunteer fire department existing in Hampton. Helpers came to the fires as they saw fit. They were under no obligation to attend any fire or drill. They signed no agreement of any nature; if any one of them did not come as often as Glocksine thought he should, he was not called the next time. The personnel of the helpers for Glocksine partly changed from time to time. He had from 7 to 10 names on the list. The helpers would carry water or help with the lines or do whatever they could to assist. Glocksine never created or organized any fire department in any of these townships. The testimony shows that helpers came to fires because they liked to go to see how much property they could save. There was testimony to the effect that there was no record kept of helpers who attended a fire. Badges were given by Glocksine to the men who usually assisted at the fires. There was testimony that Glocksine agreed that the equipment he would furnish included helmets, boots and raincoats, but there was not sufficient water out in the townships so that it required more than one man on the fire truck. One witness testified that at different fires "the farmer boys came, the preacher came, and there was an awful lot of people in the neighborhood that came and carried water and helped. In fact, about every farmer would volunteer when it comes to his neighbor's house burning." The tes-

timony is ample and positive that the township never created or organized any volunteer fire department, nor was there any testimony that the men themselves organized such department although certain ones gave Glocksine their names so as to be called to attend fires.

The township of Hampton never bought, rented or leased any fire equipment, nor did it furnish money for fire equipment. The township of Bangor did spend $50.47 for coats, boots and helmets, and the township of Portsmouth expended $49.14 for two pair of boots, coats and helmets. There was testimony that these boots, et cetera, were used by the people who first arrived at the fire. Glocksine furnished sirens for some automobiles that went to the fires but he charged the individual users for them. At times after a fire and a saving of property, the insurance companies willingly responded to requests that they make a contribution to the township. Sums so received were placed in the contingent fund. Glocksine secured letterheads from the clerks of the township boards, prepared letters and they were sent by the clerk to the insurance companies asking for contributions and stating that "Hampton township has bought fire protection and are paying volunteers." The township boards did not pay any volunteers. The only official authority from the board in regard to the insurance companies consisted of a resolution by the Hampton township board that the moneys so received from the insurance company be placed in a contingent fund, and that at no time more than 50 per cent. of this amount be donated to volunteers. A motion that $25 of the money received should be distributed to volunteer firemen was carried. There is no showing that any such payment was made to volunteer firemen, or if such payment had been made, the moneys would not

have been turned over to Glocksine for distribution. There is no showing that the township board had a list or knew who the volunteers were.

Leonard Gasta was engaged in the farm implement business on the same road that Glocksine's business was located. He was a friend of Glocksine and was on his list to go to a fire. He went to a large number of fires. On his car he had a siren which the testimony indicates had been furnished him by Glocksine. On the 7th of August, 1941, he received from Glocksine a fire extinguisher and fireman's cap and an emblem, depicting a ladder and fire hook with the letters F.D. to put on his car. Evidently he was purchasing them from Glocksine, who billed him for everything except the badge. The badges, siren and emblems were used by those who assisted at fires in order to avoid delays in traffic and stopping at stop streets in the city of Bay City on their way to a fire although they had no legal right to violate traffic laws. On August 7, 1941, Gasta received a fire call from Glocksine. He immediately got into his automobile, drove at a very rapid rate across a railroad crossing expecting to cross the tracks before an oncoming train reached him. His car was struck by the train and Gasta was killed. His wife and two minor children, claiming dependency and asserting that Gasta was a member of a volunteer fire department in the three townships, and also in the employ of Glocksine, filed a petition for compensation from all of them and also included the State accident fund, Glocksine's insurer. The deputy commissioner held that the three townships were liable for funeral expenses, and compensation for 300 weeks at $18 per week, but that Glocksine and his insurer were not liable. An appeal was taken to the department, which entered an award denying any compensation. Plaintiffs have ap-

pealed. They concede that Glocksine and the insurer are not liable, but they claim they are entitled to compensation from the three townships under section 8413, 2 Comp. Laws 1929, as amended by Act No. 107, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8413, Stat. Ann. 1942 Cum. Supp. § 17.147), wherein it is provided that members of a volunteer fire department of any city, village or township shall be deemed to be employees of such city, village or township and entitled to all the benefits of the act when injured in the performance of their duties as members of such volunteer fire department, and that they shall be deemed and assumed to be receiving the sum of $27 per week as wages from said village, city or township. The department held that there was no evidence establishing that a volunteer fire department was organized and in existence at the time of the fatal accident. Glocksine made separate contracts with each township. The department held:

"The contract between Hampton township and Paul R. Glocksine did not create a 'volunteer fire department' in Hampton township. There is no evidence establishing that a 'volunteer fire department' was organized and in existence in Hampton township at the time of the fatal accident. Each of the contracts which Paul R. Glocksine had with the defendant townships was a separate contract between him and each respective township. The respective contracts did not create a 'volunteer fire department' for each of the three townships. There is no evidence establishing that a 'volunteer fire department' was organized jointly for the three defendant townships.

"In our opinion, in order that an individual be a member of a 'volunteer fire department' and come within the purview of the aforequoted statutory pro-

vision, there must be in existence an organized fire department, otherwise anyone momentarily rendering assistance in fighting a fire could be considered a volunteer fireman and entitled to the benefits provided by the compensation act. It would seem that no such construction was intended by the legislature for the aforequoted statutory provision as it obviously could result in absurdities. We find that plaintiffs' decedent when fatally injured was not a member of a 'volunteer fire department' of Hampton township or of a 'volunteer fire department' organized jointly for Hampton, Portsmouth and Bangor townships.''

There is no question but that decedent as well as others were volunteers and went to fires under the direction of Glocksine who was paid for rural fire protection. The testimony, however, preponderates in favor of the finding of the department that there was no volunteer fire department for any of the townships.

We have but briefly recited the main facts in the case as we view them. Other details have been omitted from the opinion though we have carefully considered them. We are satisfied that none of the townships had a volunteer fire department notwithstanding some testimony that the township knew that there were volunteers who went to fires. In the last analysis, however, we are confronted with questions of fact and we follow the general rule that if there are any facts that sustain the findings of the department, we must affirm the award. We do not believe that section 8413, *supra,* applies to volunteers or helpers who go to a fire unless there is an organized volunteer fire department. Section 2461, 1 Comp. Laws 1929 (Stat. Ann. § 5.2622), provides for the manner in which the fire protection may be organized by a township or a contract may be entered into with any other township, city or village which maintains a fire department for service, et

cetera. The contract with Glocksine was made with an individual and not with another township board or legislative body of any other township, city or village. It was a contract made for rural fire protection, and no question is raised as to its having been made with an individual. Section 2460, 1 Comp. Laws 1929, as amended by Act No. 188, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2460, Stat. Ann. 1940 Cum. Supp. § 5.2621), provides that the township board may appropriate annually a sum not to exceed $750 to purchase rural fire protection from any municipality or other corporation owning or operating any fire extinguishing apparatus or equipment either within or adjacent to said township. While the fire protection was not purchased from a municipality or other corporation owning and operating a fire extinguishing apparatus, but from an individual who owned and operated such apparatus and equipment, no irregularity is claimed on that account. The three townships separately and independently purchased rural fire protection from Glocksine whose friends and acquaintances as well as others went to fires and assisted in extinguishing them. This is a far cry from constituting a volunteer fire department of the townships or any of them. We believe that the department was correct in its holding.

The award of the department is affirmed, but without costs, as a public question is involved.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.